UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-60174
Summary Calendar
_____

DELORES TOWNSEND; JAMES TOWNSEND,

Plaintiffs-Appellees,

versus

AMERICAN BONDING COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(4:93-CV-121-LN)
_____
October 26, 1995
Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

American Bonding Company appeals the judgment, on a jury verdict, awarding compensatory and punitive damages to Delores and James Townsend. We **AFFIRM**.

I.

On February 5, 1993, James Townsend was arrested by the Newton County, Mississippi, sheriff's department on a fugitive warrant from Kentucky, charging him with theft by deception (writing a

_____

[1]   Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that rule, the court has determined that this opinion should not be published.

check with insufficient funds).[2]  Subsequent to the arrest, the sheriff's department learned that a Wisconsin warrant for felony non-payment of child support was pending against Mr. Townsend. Bond was set at $5,000 on each charge.

With the assistance of his wife, Delores, Townsend purchased two bail bonds from American Bonding Company (ABC), through its local agent, Hampton Gardner.  Gardner required the Townsends to pledge as collateral several items of farm equipment and a 1977 Jeep.  The collateral instrument provided that the property was to remain in the Townsends' custody until the bail bonds were forfeited, and that the property was not to be removed from the Townsends' property in Union, Mississippi.  After being released from jail, Mr. Townsend continued operating his swimming pool restoration and construction business, which involved travel to several job sites outside the state.  As requested by Gardner, Mrs. Townsend periodically reported to him.

On April 16, the sheriff received from the Governor of Mississippi an extradition warrant to pick up Mr. Townsend for return to Kentucky.  Gardner and the sheriff contacted Mrs. Townsend and asked her to have her husband report.  Mr. Townsend, who was in Texas at the time, spoke with Gardner by telephone on April 22.  Gardner told him that he wanted him to come in to sign some papers, but did not mention the warrant.

---

[2]     At the trial of this action, Mr. Townsend testified that the check was in payment for repairs on a truck, but that the repairs were not done properly, so he did not deposit the funds to cover the check.

On April 26, the sheriff notified Mrs. Townsend that her husband must report by 3:00 p.m. on April 27. Mrs. Townsend was unable to contact her husband at that time, because he was traveling. When Mr. Townsend did not report, the sheriff executed a fugitive warrant on April 28. That same day, despite the fact that the bonds had not been forfeited, Gardner went to the Townsends' farm to pick up the equipment that had been pledged as security for the bail bonds. While at the farm, he noticed that the 1977 Jeep was missing.

Later that same day (April 28), Gardner signed two affidavits in Newton County Justice Court, accusing Mrs. Townsend both of being an accessory after the fact, for concealing Mr. Townsend's whereabouts, and of removing, concealing, or disposing of personal property (the Jeep) subject to a lien. Mrs. Townsend was arrested that afternoon, and spent two days in the Newton city jail before being able to post bond. Gardner was present when Mrs. Townsend was arrested; he told her that she would not have gotten into trouble if she had cooperated. The arrest was reported in a publication having general circulation in Mrs. Townsend's county of residence.

On May 3, the Kentucky criminal charge against Mr. Townsend was dismissed, after he made restitution for the check; the Wisconsin charge was dismissed on June 15, after he settled the child support arrearage. On May 14, ABC's attorney requested that Gardner dismiss the charges against Mrs. Townsend; and they were dismissed on May 25.

For two weeks after he picked up the Townsends' farm equipment, Gardner took bids on it from the public. On May 21, the Townsends filed a complaint in replevin in an attempt to regain possession of the equipment. On June 23, Mrs. Townsend furnished Gardner with written proof that both charges against Mr. Townsend had been dismissed; but Gardner did not allow them to retrieve their equipment until August 16.

The Townsends filed suit against ABC on November 4. Mrs. Townsend asserted separate claims, including for malicious prosecution and abuse of process. Mr. and Mrs. Townsend also asserted claims for trespass and for bad faith breach of contract for taking, refusing to return, and damaging their personal property. The jury awarded compensatory damages of $55,000 to Mrs. Townsend for malicious prosecution and abuse of process, and of $5,185 to Mr. and Mrs. Townsend for property damages and costs; and punitive damages of $83,000.

## II.

ABC challenges the denial of a peremptory challenge, and the evidentiary support for the damage awards.

## A.

Concerning the peremptory challenges issue, and as the Townsends note, ABC failed to order a transcript of voir dire; consequently, we are unable to review this contention. *See* FED. R. APP. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record

- 4 -

a transcript of all evidence relevant to such finding or conclusion."); ***United States v. Hinojosa***, 958 F.2d 624, 633 ("to maintain the integrity of the rules and the appellate process, we properly decline to review controversies in which the record is not supplied to us").

In its reply brief, ABC states that "for whatever reason", the voir dire was not transcribed, suggesting that perhaps "the record was never there".[3] But the transcript order form, signed by ABC's attorney, contains no mark in the box next to "Voir dire". It is therefore apparent that the record contains no transcript of the voir dire simply because ABC did not order one.

In any event, ABC asserts that this issue was preserved for appeal because it was raised in its motion for new trial. Paragraph 1 of that motion asserts that the district court "erred in failing to excuse Juror Number 11 from the panel when the defendant exercised a peremptory as to said Juror". The order denying the motion does not address that contention specifically, stating only that the motion "is not well taken and should be denied". The motion and order do not provide an adequate basis for review of the alleged denial of the peremptory challenge.

---

[3] We reject ABC's suggestion that FED. R. APP. P. 10(c) (setting forth the procedure to be used if no report of the evidence or proceedings at a trial was made, or if a transcript is unavailable) is applicable. ABC has not complied with the procedures set forth in Rule 10(c) (requiring appellant to prepare a written statement to be served on the appellee, and requiring the statement and any objections or proposed amendments to be submitted to the district court). Moreover, there is no reason to believe that the transcript is unavailable; the record reflects only that ABC did not order transcription of the voir dire.

In sum, without a transcript of the voir dire, we are unable to discern the district court's reasons for the denial and, therefore, cannot determine whether it abused its discretion.

B.

Next, ABC contends that the two compensatory damage awards are speculative and without basis in law or fact. "Absent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994).

1.

Without elaboration or explanation, ABC maintains that the evidence would support, at most, an award of $3,000 for property damage and costs, not the $5,185 awarded. We will not consider issues not properly briefed on appeal. *See, e.g.*, **Abbott v. Equity Group, Inc.**, 2 F.3d 613, 627 n.50 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1219 (1994).[4]

---

[4] Even assuming ABC properly briefed its challenge to the property damage award, the record contains ample evidence to support the award. Gardner admitted that after repossessing the Townsends' farm equipment, he left it out in the open, where it was rained on and weathered. Mr. Townsend testified that the wooden hoppers on a planter had deteriorated because of water damage and would have to be replaced; that he incurred expenses of $250-300 to move the equipment back to his farm; and that the Townsends had hired someone to prepare 50 acres of land for planting, but were unable to plant because Gardner had their equipment during planting season. And, there was evidence that Mrs. Townsend paid $1,225 for a bond to secure her release from jail, and that the Townsends paid an attorney $1,000 plus court costs for representing them in the replevin action.

ABC asserts that the award of $55,000 to Mrs. Townsend is speculative because she sought no medical advice or treatment and offered no medical proof. It claims that there can be no recovery for mental distress under Mississippi law in the absence of physical injury. But, the Mississippi Supreme Court has stated that such an "out-moded view ... has never been appropriate in the context of the tort of malicious prosecution". ***Royal Oil Co., Inc. v. Wells***, 500 So. 2d 439, 448 (Miss. 1986).

> The very nature of the tort is such that, when committed, it will inflict mental anguish and emotional distress upon the Plaintiff. This is one of the major elements of injury or loss ... the victim of a malicious prosecution will suffer and for which she will be entitled to redress. Furthermore, the nature of the tort is such that it will seldom produce an impact or physical injury.

***Id***.

Mrs. Townsend testified that she had never spent any time in jail before her arrest, and had never been convicted of a crime. She testified that the conditions in jail as "unbearable"; that she was placed in a six-by-six-by-eight-foot jail cell for two days; that she was told not to use the bathroom until she had cleaned it, but was unable to obtain cleaning supplies until the morning after her arrest; that her mattress had no sheets, pillow, or blankets; that she was unable to sleep while in jail and still had trouble sleeping for three to four weeks after she was released; that the food was "bad" and her stomach was upset so she could not eat; that for a week following her arrest, she had difficulty eating without becoming nauseated; that she still had problems with nausea at the

time of trial (January 1995, almost two years after her arrest); and that she was afraid to take a shower while in jail. Mrs. Townsend testified also that she becomes emotional whenever she thinks or talks about the incident, but she did not seek medical or psychiatric treatment because she thought she could work through her problems; and that she was very concerned about her arrest being published, and worried that her reputation would be damaged. This evidence sufficiently supports the compensatory damages awarded to Mrs. Townsend.

## C.

For its last point, ABC contends that the district court erred by instructing the jury on punitive damages, claiming there was no factual or legal basis for such an award, so the award must have been based on bias and passion. Under Mississippi law, "[p]unitive damages are properly allowed where the tort complained of was malicious, wanton, wilful, or capricious". *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1102 (Miss. 1992). "The same factual evidence of malice ... undergird[ing] the jury's positive finding of that element of the tort of malicious prosecution should at least suffice to submit the question of a punitive damage assessment to the jury." *Royal Oil Co.*, 500 So. 2d at 450.

### 1.

ABC claims that the Townsends failed to prove bad faith necessary for an award of punitive damages. Under Mississippi law, "a finding of malice will give rise to an assessment of punitive damages". *Id.* The term "malice" in a malicious prosecution action

"is used in an artificial and legal sense and is applied to prosecutions instituted primarily for a purpose other than that of bringing an offender to justice". *C & C Trucking*, 612 So. 2d at 1100. Malice "may be proved by circumstantial evidence or the jury may infer malice from the facts of the case ... [or] from a finding that the defendant acted in reckless disregard of another person's rights". *Id.* "Moreover, absence of probable cause for the prosecution is circumstantial evidence of malice." *Id.* "Probable cause requires the concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." *Id*. "One is as essential as the other." *Royal Oil Co.*, 500 So. 2d at 443.

There was evidence that Gardner acted without probable cause and in reckless disregard for Mrs. Townsend's rights. He admitted that the accessory-after-the-fact charge against her was based upon his own assumptions and speculation, because "[t]hat's all I had to go off of at the time". Gardner admitted also that he had no knowledge of either who removed the Jeep from the Townsends' property, or that Mrs. Townsend had secreted or concealed it, and that he did not know whether Mrs. Townsend had disposed of it. Mr. Townsend testified that he used the Jeep to transport equipment to a job site and intended to return it to the farm, and that Mrs. Townsend had nothing to do with his decision. Mrs. Townsend testified that she told Gardner on the day of her arrest that the Jeep was in Georgia being repaired; and that she had nothing to do with it being removed. She testified further that Gardner did not

want to know where her husband was; and that it was impossible for her to know his whereabouts at all times because he was traveling between job sites.  This evidence sufficiently supports the punitive damages.

2.

Citing **Whittington v. Whittington**, 535 So. 2d 573 (Miss. 1988), ABC contends that punitive damages cannot be awarded because there was no evidence of ABC's net worth.  But in 1992, the Mississippi Supreme Court expressly overruled **Whittington** in **C & C Trucking Co.**, holding that "it is not legally necessary for either plaintiff or defendant to introduce evidence of the net worth of the defendant during the trial to support an award of punitive damages".  612 So. 2d at 1105.

3.

Finally, ABC asserts that, "[e]ven assuming arguendo that [ABC] breached its contract with the Townsends, absent an independent tort such as intentional wrong, insult, abuse or gross negligence, there is no recovery for punitive damages".  This contention is misplaced; the case was submitted to the jury on the theories of abuse of process and malicious prosecution, not breach of contract.[5]

---

[5]    Obviously, ABC's contention that punitive damages cannot be awarded in the absence of compensatory damages is unavailing in light of our affirmance of the compensatory damage award.

## III.

For the foregoing reasons, the judgment is

**AFFIRMED**.